COTTLE *v.* McCASKILL, administratrix, *et al.*

# 560

*Smith & Ferguson* and *E. K. Wilcox,* for plaintiff.

*Steve F. Mitchell,* for defendants.

HILL, J. The record in this case discloses that E. J. Cottle owed a number of notes to the Bank of Ty Ty at the time that D. D. McCaskill, deceased, became the purchaser of the assets of the bank, including a stock assessment, the total amount of such notes and stock assessment against E. J. Cottle aggregating nearly $6,000. McCaskill, in seeking to collect the amount of indebtedness against Cottle, entered into an agreement by the terms of which Cottle was to pay $3,000 and receive all of the notes and the stock assessment, upon which notes he appeared as maker and liable under the law by virtue of the stock assessment. In agreeing to accept this reduction it was expressly agreed that Cottle was only to be relieved from his liability upon these notes where he appeared as maker, and the stock assessment. To secure the payment of the $3,000 Cottle gave to McCaskill two promissory notes, one for $1500 due on demand, and the other due November 27, 1927, secured by a deed to certain described realty. It was agreed that the note due on demand was to be paid by delivery of lumber to the amount of $1500, and secured by a bill of sale to the lumber. There appeared certain notes in the hands of McCaskill that bore the indorsement of E. J. Cottle; and after having purchased lumber sufficient in amount to satisfy the demand note, McCaskill and Cottle entered into an agreement by the terms of which McCaskill purchased additional lumber to satisfy the notes upon which Cottle was indorser. A witness, Mr. T. M. McCranie, testified that Mr. Cottle stated, with reference to this agreement, "I don't see any reason why I should not do that." This lumber was delivered, and the notes upon which Cottle appeared as indorser were mailed to Cottle as satisfied. Mr. Cottle's attorney testified that Cottle refused to accept the notes, stating that the lumber was to be applied on his individual debt. Mrs. Cottle, the plaintiff in error, seeks to charge to the estate of McCaskill all of the lumber in satisfaction of the two notes for

$1500 each, which Mrs. Cottle had assumed and agreed to pay, when E. J. Cottle conveyed his property to his wife. It is charged by the defendants that this transfer of his property by Cottle to his wife rendered him insolvent, and was in furtherance of a fraudulent scheme to defeat the collection of the note for $1500 by the estate of D. D. McCaskill.

The grounds of the special demurrer were met by amendment to the answer, and the judge did not err in overruling the demurrer. The amending grounds of the motion for new trial are but elaborations of the general grounds that the verdict is contrary to the evidence and without evidence to support it; and that the verdict is contrary to law. R. D. Smith, a witness for Mrs. Hudie E. Cottle, the plaintiff, testified: "I have represented Mr. E. J. Cottle in all of his legal matters for the past fifteen years. In the summer of 1926 he employed me to assist him to reach a settlement with D. D. McCaskill on account of certain notes given by Mr. Cottle to the Bank of Ty Ty, which had been purchased and were then held by Mr. McCaskill. We entered into negotiations with Mr. McCaskill shortly after I was employed, and had a number of conferences with him in my office, at which his attorney, Mr. Steve Mitchell, was present. Mr. McCaskill held three classes of obligations against Mr. Cottle: a stock assessment for several thousand dollars, certain notes which Mr. Cottle had signed as principal, and certain notes which Mr. Cottle had signed as security. At one of the conferences between Mr. Cottle and Mr. McCaskill, at which both Mr. Mitchell and myself were present, Mr. Cottle stated that he was not able to pay all of the notes and claims held against him; he stated that he was anxious to first pay the notes which he had signed as principal, as he felt under more obligation to pay notes of this character than to pay the notes which he had signed as security. He stated that he was not able to pay all of the notes and the stock assessment held by Mr. McCaskill against him, and that he wished to settle and pay first the notes which he had signed as principal, and asked Mr. McCaskill to name the lowest figure he would accept in payment of notes of this character, with the understanding that the stock assessment would be canceled. After several conversations it was finally agreed between Mr. Cottle and Mr. McCaskill that Mr. Cottle would pay to Mr. McCaskill the sum of $3000 in satis-

faction of all the notes which Mr. Cottle had executed to the Bank of Ty Ty as principal, and that the stock assessment would be canceled. It was agreed that Mr. Cottle would execute to Mr. McCaskill two notes for $1500 each, in settlement of these liabilities, and that after these had been settled and paid he would take up with him the question of arranging in some way the notes which he had signed as security. He stated to Mr. Mc-Caskill that he was really not able to pay any of these security notes, but that after he had paid the $3000 agreed upon he would try to reach some satisfactory agreement with him in regard to the security notes. All of this was agreed to by Mr. McCaskill, and on November 27, 1926, Mr. Cottle executed and delivered to Mr. McCaskill two notes for $1500 each, one due November 27, 1927, and one due on demand; the one due on demand to be paid for in lumber and shingles. The payment of the notes was secured by a deed to the property mentioned in the petition. Upon execution of these new notes Mr. McCaskill surrendered to Mr. Cottle all of the notes which Mr. Cottle had given to the Bank of Ty Ty as principal, and also canceled and surrendered the stock assessment. Some considerable time after the notes were given by Mr. Cottle to Mr. McCaskill, Mr. Cottle came to my office and delivered to me certain notes which he had signed as security and which had been mailed to him by Mr. McCaskill. This was just a few days after the date of the letter written by Mr. McCaskill enclosing the notes. I saw Mr. McCaskill in person in my office and discussed this matter with him. At that time I tendered him the notes back and asked him to take them, as Mr. Cottle and his wife insisted that all payments should be credited on the two $1500 notes. Mr. Mc-Caskill refused to accept the notes. He stated that he did not blame Mr. Cottle for trying to have the $1500 applied on the notes, but he had had it applied on the notes which he had mailed to Mr. Cottle, and expected to keep the credits there if he could get by with it. At the time Mr. McCaskill purchased the assets of the Bank of Ty Ty, it held several notes against me. I had an agreement with Mr. McCaskill by which I was to pay him $1000 in satisfaction of these notes. It was also agreed that for the next twelve months I would, without any charge, assist him in any litigation in which he might call on me, provided it was in connection with the Bank of Ty Ty matters. He did not call on me to

represent him in the Cottle matter, but, on the contrary, stated that he was glad for me to represent Mr. Cottle, as he felt like it would help him to reach an agreement with Mr. Cottle."

Mr. T. M. McCranie testified for the defendants, as follows: "I was employed by D. D. McCaskill for several years before his death. I am, to some extent, acquainted with his purchase of lumber from Mr. Cottle of Ty Ty. During the time Mr. McCaskill was negotiating with Mr. Cottle to purchase timber to be shipped to Hortense, Mr. McCaskill and myself met Mr. Cottle in front of the Bank of Tifton, and Mr. McCaskill told Mr. Cottle that he was going to build a good many houses down there and that he was going to have to buy more lumber than he had expected to have to buy; he had talked to him previously to that time; and he told Mr. Cottle that he thought he could use enough to take up all of his indorsements. Mr. Cottle answered, 'I don't see any reason why I should not do that.' After that conversation Mr. McCaskill did receive certain lumber from Mr. Cottle. At the time of the conversation in front of the Bank at Tifton between Mr. Mc-Caskill and Mr. Cottle, nothing was said in regard to applying the lumber which Mr. McCaskill was purchasing. from Mr. Cottle, or had already purchased, upon the original note of Mr. Cottle, or upon his notes to which he referred as notes of primary liability; that was not discussed. I have never heard until to-day a word said about any primary liability. Mr. McCaskill told Mr. Cottle that he wanted to buy more lumber and that he would probably take up his whole account of indorsement with lumber; and Mr. Cottle answered: 'I don't see any reason why I should not do that.'"

There was other evidence both for the plaintiff and defendant, to the same effect as above; but the foregoing is sufficient to show that the verdict is not without evidence to support it, and is not contrary to law for that reason. The question was one for the jury, and under the evidence they found in favor of the defendants; and we can not say as matter of law that the verdict was without evidence to support it, and was contrary to law.

*Judgment affirmed. All the Justices concur.*